**MOUNTAIN FUEL SUPPLY COMPANY, a corporation, and Woods Petroleum Corporation, a corporation, Plaintiffs,**

v.

**CHORNEY OIL COMPANY, a corporation, et al., Defendants.**

No. 5447 Civ.

United States District Court, D. Wyoming.

Nov. 16, 1971.

W. Hume Everett and Donald R. Winship, of Everett, Everett & Winship, Casper, Wyo., and Paul Brown of Brown, Verity & Brown, Oklahoma City, Okl., for plaintiffs.

William H. Brown and Claude W. Martin of Brown, Drew, Apostolos, Barton & Massey, Casper, Wyo., for defendants.

KERR, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. That plaintiff Woods Petroleum Corporation, hereinafter referred to as "Woods", is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Oklahoma. That plaintiff Mountain Fuel Supply Company, hereinafter referred to as "Mountain Fuel", is a corporation organized and existing under the laws of the State of Utah, having its principal place of business in Utah, and engaged in business principally as a natural gas utility company.

2. That defendant Chorney Oil Company, hereinafter referred to as "Chorney", is a corporation organized and existing under the laws of the State of Wyoming with its principal place of business in Wyoming. That defendant Raymond Chorney (also referred to as "Chorney") is the sole owner and president of Chorney Oil Company and is a citizen of Wyoming. That defendant Robert W. Scott is an employee of Chorney and a citizen of Colorado.

3. That the matter in controversy exceeds the sum of $10,000.00 exclusive of interest and costs.

4. That Chorney is an independent oil and gas operator whose principal business activity has been the organization of oil and gas leases into drilling blocks for exploration and development in the Rocky Mountain region. In 1968 Chorney organized two prospects known as the Wright Prospect and the Walker Creek Prospect. Each prospect comprised a block of oil and gas leases in the southeast portion of the Powder River Basin of Wyoming, and included a commitment by the participants for the drilling of a test well within the prospect. Chorney sold seven-eighths of the lessee's interests in said Wright and Walker Creek Prospects to Moutain Fuel (one-fourth), Woods (one-fourth), Perry R. Bass (one-eighth), and Diamond Shamrock Corporation (one-fourth), retaining for itself the remaining one-eighth working interest. These working interest owners are called "participants".

5. That this case draws into question an area of mutual interest clause appended as paragraph 39 to the Operating Agreement incorporated into the Wright and Walker Creek Prospect Agreements. Except for the lands described in each such agreement the clauses in each are identical.

6. That the clause in question was a typewritten addition to the printed form of operating agreement. This typewritten addition was drafted entirely by Mountain Fuel except for a small change added by Diamond Shamrock Corporation not material to the issues herein. After the main agreement in the Wright Prospect was sent to the participants for signature, including as part thereof by reference the form of operating agreement, Mountain Fuel wrote a letter to the other participants in the Wright Prospect suggesting an additional clause for an area of mutual interest, writing the proposed clause in the letter. The proposed additional clause was discussed by the participants in a series of letters, none of which made reference to other provisions of the printed form of operating agreement to which it was proposed to be added. Chorney did not object to the proposed clause as submitted or as later modified.

7. That the language in the area of mutual interest clauses (paragraph 39 of the Wright and Walker Creek Operating Agreements) relating to notice of acquisition is as follows:

"[A]ny party hereto acquiring any right, title, interest, or claim in and to

any oil and/or gas interest in and under the area of mutual interest shall promptly notify the nonacquiring parties of such acquisition."

The clause also imposes a thirty-day time limit after such notification for exercising an option to participate in such an acquisition.

8. That Paragraph 30 of the printed form of operating agreement to which paragraph 39 was added provides in part as follows:

"All notices authorized or required between the parties, and required by and of the provisions of this agreement, shall, unless otherwise specifically provided, be given in writing. . . ."

Paragraphs 12, 18, 21, 28, 29 and 30 of the printed form expressly require "written notice" of the activities therein described by using those words. Paragraphs 17 and 25 of the printed form use the words "shall promptly notify", without reference to written notice. These are the same words used in the added paragraph 39. Paragraphs 17 and 25 of the printed form as well as the typewritten paragraph 39 (the area of mutual interest clause in question) provide merely for prompt notification with no reference to written notice, contrary to the six other paragraphs referred to above where written notice is specified.

9. That each time when Chorney proposed to acquire and again at the time of acquiring any lease within the area of mutual interest in both the Wright or Walker Creek Prospects a Chorney representative telephoned each participant, including plaintiffs, and gave notice thereof including advice as to the cost of such acquisition. As concerns the disputed leases, such telephone communications took place largely in September and October, 1968. Until after a dispute arose in January, 1970, as to Chorney's means of notifying the participants of such acquisitions the participants accepted Chorney's oral notification and Chorney accepted their oral commitments to participate as well as their oral rejections of leases in which they refused to participate. While in some instances correspondence later covered the telephone commitments, in most cases the parties did not correspond by letter but relied on use of the telephone until after the dispute arose January 7, 1970. This conduct established a course of dealings among the participants to use the telephone for such purposes.

10. That this lawsuit concerns Chorney's acquisition of eight leases (the "disputed leases") within the mutual areas of interest affecting the Wright and Walker Creek Prospects. The Ranger lease, being United States Oil and Gas Lease, Serial No. W–0319327, is a lease embracing some 1,700 acres, 720 acres of which fall within the Wright area of mutual interest. The other seven disputed leases, designated as United States Oil and Gas Leases, Serial Nos. W–2263, W–7022, W–12357, W–16003, W–0248860, State of Wyoming Oil and Gas Lease, Serial No. 67–11474, and the Lowry lease fall partially or entirely within the Walker Creek area of mutual interest.

11. That before acquiring each of the now disputed leases, Chorney telephoned the participants, including plaintiffs, advised them of the cost to be incurred and asked them to jointly acquire or participate proportionately in the acquisition of such lease. Both Woods and Mountain Fuel in every instance refused to jointly acquire and to participate in the acquisition of each of the now disputed leases.

12. That when each of said leases was acquired, Chorney promptly notified all participants thereof by telephone, including plaintiffs, stated to them the cost and again requested each to participate at cost in such acquisition. Both Woods and Mountain Fuel at the time of such notification rejected Chorney's request to acquire an interest in such lease or participate in the acquisition.

13. That within thirty days after being notified by Chorney of Chorney's acquisition of such a lease neither plaintiff gave any notice that such plaintiff elected to participate in the acquisition or exercise an option to participate therein.

14. That both plaintiffs had actual knowledge of Chorney's acquisition and

the cost of the disputed leases at the time Chorney acquired them, and both plaintiffs knowingly refused to participate in or assert any rights to such acquisitions at that time, or, in fact for more than a year thereafter.

15. That the refusals of each plaintiff to participate in said lease acquisitions constituted a waiver of their option to acquire an interest in such leases under the agreements in question.

16. That during the time while all the participants were using the telephone for communications concerning such lease acquisitions, which as to these leases occurred principally in September and October, 1968, neither Woods nor Mountain Fuel suggested that Chorney's telephoned notification of lease acquisitions should be in writing. The question as to the form of notice was raised for the first time at the meeting of participants in Denver, Colorado, on January 7, 1970.

17. That on or about November 4, 1968, after plaintiffs repeatedly refused Chorney's requests to participate in acquisition of the now disputed leases, Chorney put those leases into two new prospects which he had assembled called the Southeast Three-Mile Creek Prospect, adjoining the Wright Prospect, and the Twenty-Mile Creek Prospect, adjoining the Walker Creek Prospect.

18. That Chorney sent its representatives to both plaintiffs in November and December, 1968, who delivered to and left with plaintiffs land maps of said new prospects showing the lease acreage in dispute to be included in the new prospects as leases which Chorney had acquired. Chorney representatives urged both plaintiffs to acquire an interest in the new prospects which included the disputed leases. Defendant Robert W. Scott in his presentation of these new prospects to both plaintiffs in November or December, 1968, pointed out to them the location of the lands in these prospects and their proximity to the lease holdings of each plaintiff in the Wright and Walker Creek Prospects.

19. That in November and December, 1968, when Chorney delivered land maps to the plaintiffs showing Chorney's ownership of the disputed leases, neither plaintiff asserted any right or option to such leases or any part thereof under the clause in question.

20. That Chorney relied on plaintiffs' refusals to share or participate in the acquisition of said leases when acquired and their silence and acquiescence in his ownership thereof and thereafter made assignments of interests therein to third parties who, with Chorney, aided in exploration affecting the same.

21. That in due course, after Chorney's acquisition of the disputed leases, Chorney filed assignments of the federal leases in the public records of the Bureau of Land Management and an assignment of the state lease in the public records of the Commissioner of Public Lands for the State of Wyoming to obtain governmental approval thereof. In due course after Chorney sold interests in the disputed leases to third parties, assignments of the interests sold in the federal leases were filed in the public records of the Bureau of Land Management and the assignment of the state lease in the public records of the Commissioner of Public Lands for the State of Wyoming. All such assignments were approved in those land offices. At all pertinent times both plaintiffs purchased and made use of weekly abstracts of the federal land office records where lease assignments were filed, and both plaintiffs had in their offices in March of 1969, or thereabouts, reports showing from said land office records Chorney's acquisition and subsequent sale of said leases.

22. That plaintiffs delayed in asserting their rights to the disputed leases until long after seven-eighths of the total interests in the leases had been sold by Chorney and assigned to others and the leases had increased markedly in value because of developments in the area brought about principally through the efforts, expenditures and risks of other parties.

23. That between the time when Chorney notified plaintiffs of the acquisition of the disputed leases and the

time when plaintiffs asserted their claim, an oil field had been proved in the region of the disputed leases, numerous wells having been drilled in the general vicinity thereof by persons other than plaintiffs. By the time plaintiffs asserted their claims, these leases had substantially appreciated in value.

24. That both plaintiffs could have asserted their claims to an option on the now disputed leases at the time when Chorney notified them of Chorney's acquisition and before such leases appreciated markedly in value. By their actions, plaintiffs avoided the risks involved in these highly speculative oil properties while awaiting the results of drilling by others in the area.

25. That neither Chorney nor any agent of Chorney was guilty of any fraud toward either of the plaintiffs in dealing with the leases in question, nor did any of the defendants realize any secret profits in dealing therewith. Neither Chorney nor any agents of Chorney concealed from either of the plaintiffs or misrepresented to either plaintiff any material fact concerning the acquisition of the leases in dispute. In all of its activities concerning the proposed and actual acquisition of the leases in dispute, Chorney acted openly and fairly with the plaintiffs and the other participants in those prospects.

26. That Mountain Fuel provided its interpretation of the mutual area of interest clauses when it acquired an interest in the north half (N½) of Section 17, Township 36 North, Range 67 West, within the Walker Creek area of interest. After Mountain Fuel acquired this interest, it did not notify any of the participants in the Walker Creek Prospect of its acquisition of such lease interest either orally or in writing. Its explanation for not notifying other participants was that it believed the other participants had been afforded an opportunity to participate in the acquisition prior to the time that Mountain Fuel acquired its interest and that this canceled any requirements of paragraph 39 to notify the other participants of Mountain Fuel's acquisition of this lease interest. Chorney agreed with such interpretation and Woods took no exception to it.

27. That taking into consideration all of the evidence, facts and circumstances of the case, together with the reasonable inferences to be drawn therefrom, the Court finds generally for the defendants and against the plaintiffs.

28. That in view of the foregoing Findings of Fact the Court makes no Finding of Fact as to the defenses of unclean hands or the rule against perpetuities.

## CONCLUSIONS OF LAW

1. That the Court has jurisdiction of the parties and of the subject matter in this case.

2. That in construing the notice requirements of the area of mutual interest clause, any ambiguity as to the meaning of the language or the intention of the parties must be resolved against Mountain Fuel, who drafted the clause.

3. That any ambiguity as to the meaning of the language of paragraph 39 may be resolved by resorting to the conduct of the parties prior to the time the dispute arose in communicating relevant information by telephone without writing.

4. That the interpretation placed upon the notification provision of the mutual area of interest clause by the participants before the dispute arose permitted telephoned advice of acquisition and telephoned commitments or refusals to participate.

5. That the interpretation placed upon the mutual area of interest clause by Mountain Fuel when it acquired an interest was that if a party had been afforded the opportunity to participate in an acquisition and rejected it the party who proceeded to acquire an interest therein had no obligation to notify the participants of its acquisition.

6. That the words in paragraph 39 "shall promptly notify" should be

taken in their ordinary meaning and under the circumstances in this case need not be construed as words requiring written notice.

7. That the evidence is not sufficient to establish any clear intention of the parties, when the mutual area of interest clause was agreed upon, to require formal written notice of acquisitions.

8. That Paragraph 39 of the operating agreements creates an option to share in future acquisitions which could only be exercised within thirty days after the acquiring party notifies the other participants of the acquisition. In the absence of an election to participate and notice thereof within the thirty day period, such option expired.

9. That Chorney fulfilled his obligation under the area of mutual interest clause by promptly notifying the nonacquiring parties, including the plaintiffs, of his acquisition of the disputed leases.

10. That Chorney supplemented his telephoned notifications of acquisition when he provided plaintiffs with land maps which showed his acquisition of the disputed leases at the time of presenting to plaintiffs the Twenty-Mile Creek and Southeast Three-Mile Creek Prospects in November and December, 1968.

11. That because each plaintiff had actual notice and full knowledge that Chorney had acquired the disputed leases there was no necessity that Chorney give them any other type of notice.

12. That even if Chorney had not given plaintiffs actual notice, each plaintiff had knowledge of facts which would lead it to make inquiry, and each plaintiff would be deemed to have the knowledge which a reasonably diligent inquiry would have disclosed. Such inquiry would have disclosed Chorney's acquisition of the disputed leases.

13. That when each plaintiff refused Chorney's request to participate in the acquisition of each disputed lease and remained silent as to any right to exercise an option thereon, it waived the optional right to acquire an interest therein.

14. Both plaintiffs waived their right to acquire an interest in such leases under the area of mutual interest option by remaining silent and acquiescing in Chorney's assertion of ownership of the leases in question for periods in excess of thirty days. The option right being for thirty days, plaintiffs' acquiescence for any longer period in Chorney's assertions of adverse rights constituted acquiescence for an unreasonable length of time.

15. That plaintiffs are estopped to assert a claim to the disputed leases, Chorney having relied to his detriment on plaintiffs' refusals to share in the acquisition thereof and their silence and acquiescence in his assertion of adverse rights therein for an unreasonable length of time. Chorney changed his position to his detriment in making assignments to third parties, and by sharing in the risk and cost with others of exploration wells on the prospects into which the disputed leases were put, all in reliance upon plaintiffs' refusals to participate in acquisition of the disputed leases and their silence and acquiescence after actual notice and knowledge of the relevant facts.

16. That the whole of the evidence fails to establish a breach of contract by Chorney.

17. That the whole of the evidence fails to show any fraud or concealment or breach of trust and confidence by Chorney, regardless of the legal relationship of the participants to one another.

18. That plaintiffs seek equitable relief on the basis of the form of notice given by Chorney of the acquisitions in question. A maxim of equity is that it looks to substance rather than to form and in so doing will disregard a mere technicality.

19. That in view of the Findings of Fact and the foregoing Conclusions of Law the Court deems it unnecessary to

state conclusions of law relating to the doctrine of unclean hands and the rule against perpetuities.

20. That plaintiffs are barred by laches from asserting their claims herein.

21. That defendants have waived any right to relief on the counterclaim.